**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **VERONICA A. WILLIAMS,** | |
| **Plaintiff,** | **Civil Action No. 16-5301 (ES) (JAD)** |
| **v.** | **OPINION** |
| **LITTON LOAN SERVICING, et al.,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court with an extensive history. *Pro se* Plaintiff Veronica A. Williams ("Plaintiff") alleges that Defendants Litton Loan Servicing ("Litton"), HSBC Bank USA, N.A. ("HSBC"), Goldman Sachs,[1] Fremont Home Loan Trust 2006-C Mortgage-backed Certificates, Series 2006- C ("Fremont"), Ocwen Loan Servicing ("Ocwen"), Ocwen Financial Corp., and Stern & Eisenberg, PC, LLC ("Stern & Eisenberg") (collectively, "Defendants"), wrongfully attempted to collect a debt following an alleged wrongful foreclosure in New Jersey State Court. Plaintiff previously brought her grievances to New Jersey Superior Court, Essex County, Law Division, but her claims were dismissed. On August 25, 2016, Plaintiff filed this matter based on the same operative facts and alleging substantially similar, if not identical, claims. Defendants moved to dismiss Plaintiff's Complaint asserting jurisdictional challenges under

---

[1] Defendants' Counsel asserts that no legal entity named Goldman Sachs exists and assumes for the basis of its response, that Plaintiff intended to name Goldman Sachs Mortgage Company. (*See* D.E. No. 15-1 at 1, n. 1). However, Plaintiff contests this fact, and insists that the selection of Goldman Sachs as a defendant was intentional because she is referring to "Goldman Sachs Group, commonly known as Goldman Sachs . . . ." (*See* D.E. No. 51 at 5, 7; *see also* D.E. No. 80 at 2-3). The Court will assume for purposes of the present motions that Goldman Sachs is the correct defendant named in Plaintiff's Complaint.

Federal Rule of Civil Procedure 12(b)(1) and alternatively, for failure to state a claim under 12(b)(6).[2]  Plaintiff also filed a motion for interlocutory injunction and a motion to amend the Complaint by adding a count.

Having considered the parties' submissions, the Court decides this matter and all pending motions without oral argument.  *See* Fed. R. Civ. P. 78(b).  For the reasons that follow, the Court GRANTS Defendants' motions and dismisses Plaintiff's claims *with prejudice*, and DENIES Plaintiff's motions.

## I.  BACKGROUND[3]

### A.  Factual Allegations

Plaintiff has owned a property located in South Orange, New Jersey (the "Property") since August 1983.  (D.E. No. 1 Complaint ("Compl."), ¶ 1).  Around March 2006, Plaintiff refinanced the Property with Fremont, of which HSBC Bank is the Trustee, to remove Litton as the servicer for her mortgage.  (*Id.* ¶ 3).  However, in 2008 Litton again began servicing Plaintiff's loan, this time under the ownership of Goldman Sachs.  (*Id.* ¶¶ 3, 6 & 7).  In early 2009, Plaintiff sought a loan modification with Litton.  (*Id.* ¶ 14).  Plaintiff's claims largely center around Defendants'

---

[2]    Defendants Litton, HSBC, Goldman Sachs, Fremont, Ocwen, and Ocwen Financial Corp. filed a joint motion.  (*See* D.E. No. 15-1).  Defendant Stern & Eisenberg filed its own motion to dismiss.  (D.E. No. 29).  Stern & Eisenberg's motion substantially tracks the same arguments as the other Defendants' motion, with few exceptions.  For ease of reference, this Court will refer to Docket Entry No. 15-1 as "Defendants' Motion to Dismiss" (cited as "Defs.' Mot. to Dismiss") and any arguments raised solely in Docket Entry No. 29 will be identified as such under "Stern & Eisenberg's Mot. to Dismiss."

[3]    The Court notes that many of the documents from the state-court proceedings, along with discovery materials, were attached to an electronic server and referenced in Plaintiff's Complaint.  (*See* Compl., Exhibit A; D.E. No. 2 Exhibits to Complaint ("Compl. Exs.")).  However, for ease of reference, the Court will cite to the corresponding documents in Defendants' Motion to Dismiss, which are available on the Court's electronic filing system.  (*See* D.E. No. 15-2 ("Defs.' Ex.")).  Because these documents were attached to, referred in, and are otherwise integral to the Complaint, the Court properly considers them.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (citations and internal quotation marks omitted).

forthcoming promises and affirmations, in particular Litton's, regarding said loan modification.

Plaintiff alleges that Litton instructed her to default on her mortgage payments as the first step to receiving a favorable modification. (*Id.* ¶ 16). By correspondence dated May 28, 2009, Litton offered Plaintiff a "Loan Workout Plan" contingent on Plaintiff applying for a permanent loan modification, submitting proper documentation, and making three trial payments of $3,054.83 on or before July 1, 2009, August 1, 2009, and September 1, 2009. (*Id.* ¶ 18). Plaintiff made timely payments for the first two months, but neglected to fulfill the third required payment under the agreement until September 11, 2009. (*Id.* ¶¶ 21 & 26). By this time, however, Litton had already served Plaintiff with foreclosure papers, but agreed to delay the foreclosure.[4] (*Id.* ¶¶ 22 & 27).

In November 2009, Plaintiff received and fully executed a second "Revised Loan Workout Plan." (*Id.* ¶¶ 28-29). Plaintiff contends that throughout this period, Defendant Litton continued to promise that Plaintiff could be eligible for a modification. (*See generally id.*). Then in December 2009, Defendant Litton "inexplicably failed to recognize [all of Plaintiff's] arrears payments" and "secured a foreclosure." (*Id.* ¶¶ 30, 33). Plaintiff further alleges that Defendant Litton accepted at least two of Plaintiff's payments after the foreclosure action. (*Id.* ¶ 32).

In January 2010, Plaintiff once again asked for another modification, and Defendant Litton sent a revised loan workout plan on March 16, 2010. (*Id.* ¶¶ 34 & 37).[5] However, Plaintiff "did

---

[4]    The basis for the initial service of foreclosure papers is missing from Plaintiff's Complaint. However, according to the February 9, 2016, order and opinion on the state-court action (to which Plaintiff's Complaint refers), Judge Stephanie Mitterhoff ("Judge Mitterhoff") found that Litton sent Plaintiff a letter on August 14, 2009, informing Plaintiff that Litton would not offer a modification under the first "loan workout plan" because Litton did not receive all of the requested financial documents. (*See* Defs.' Ex. E, at 6).

[5]    Judge Mitterhoff's opinion in the state-court action (discussed below) indicates that Litton had advised Plaintiff in January 2010 that she would likely be denied a modification because her income was too high. (*See* Defs.' Ex. E, at 3). Likewise, in March 2010, Litton denied the modification because of Plaintiff's failure to recognize the third workout agreement. (*Id.*).

not sign the modification agreement and stopped making monthly payments" because Defendant Litton had "mislead [sic] her to believe they would grant her a modification," the foreclosure prevented her from keeping tenants, and "she knew that she was going to lose her job offer from Homeland Security. . . ." (*Id.* ¶ 38). Plaintiff alleges that in May 2010, as a result of Defendant's conduct, FEMA and "Homeland Security withdrew their [job] offer . . . and she lost her GSA[6] contract because she did not pass the security clearance." (*Id.* ¶¶ 39 & 51-52). She further alleges that Litton's conduct caused the destruction of her business. (*Id.* ¶ 44).

In January 2013, HSBC filed a new foreclosure action for the Property. (*Id.* ¶ 45). On February 6, 2014, HSBC obtained summary judgment and final judgment in the foreclosure action before the Essex County Superior Court, Chancery Division, Docket No. F-839-13 (the "Foreclosure Order"). (Defs.' Ex. J).

### B. The State-Court Action

On June 12, 2013, Plaintiff filed a complaint in the Superior Court of New Jersey against the same defendants in this action, except Ocwen Financial Corp. (the parent company for Ocwen). (*See* Defs.' Ex. B ("State Court Complaint"); Defs.' Mot. to Dismiss at 2). In the State Court Complaint, Plaintiff asserted four claims against Defendants: Count I - violation of the Fair Debt Collection Practices Act ("FDCPA"), Count II - violation of the New Jersey Consumer Fraud Act ("NJCFA"), Count III - breach of contract, and Count IV - intentional infliction of emotional distress ("IIED"). (*Id.*). Plaintiff lodged these complaints against all defendants collectively, alleging that they "jointly engaged in a series of actions." (*See, e.g.*, *id.* ¶ 81). Stern & Eisenberg was brought into the litigation because of its representation of HSBC and Fremont in the second

---

[6]     Although Plaintiff does not define this term, the Court assumes she means General Services Administration, which is the government agency that among other things, manages federal real estate. Plaintiff asserts she "owns a firm that once held GSA Schedules." (Compl. ¶ 3).

effort to "wrongfully foreclose on Plaintiff's home and wrongfully collect a debt." (*Id.* ¶ 9).

After discovery, Defendants filed for summary judgment on all four claims. (Defs.' Mot. to Dismiss at 3). On January 23, 2015, Judge Mitterhoff for the Superior Court of New Jersey, Essex County Law Division, entered an order granting summary judgment in favor of Defendants on Counts I and IV, and denying summary judgment on Counts II and III. (Defs.' Ex. C). On reconsideration, Judge Mitterhoff dismissed Counts II and III against all Defendants, except for Litton. (Defs.' Ex. E). Thus, Litton was the only remaining defendant in the case.

In a subsequent order, Judge Mitterhoff granted Plaintiff partial leave to amend her allegations supporting Counts II and III against Litton. (Defs.' Ex. F ("Denial Order") at 1). In particular, the court ordered that "Plaintiff is permitted to amend to include the following causes of action against Litton only: common law fraud, negligent misrepresentation, bad faith and tortious interference with [a] contract." (*Id.*). However, the court explicitly stated that "no new causes of action may be brought against any other Defendant, as the Court has dismissed all parties, except for Litton, from this case." (*Id.*).

On April 27, 2016, Plaintiff filed a motion to appeal the Denial Order with the Appellate Division of the Superior Court of New Jersey. (*See* Defs.' Mot. to Dismiss at 4). By order dated June 13, 2016, the Appellate Division denied the motion and dismissed the appeal as interlocutory. (Defs.' Ex. G). Because Plaintiff failed to take further action on Counts II and III against Litton, the Superior Court of New Jersey dismissed Plaintiff's State Court Complaint for lack of prosecution on June 14, 2016. (Defs.' Ex. H). The dismissal notice expressly stated that dismissal was "without prejudice" and that "judgments previously entered in this case are not affected by this [dismissal] order." (*Id.*). Plaintiff then attempted to file a notice of appeal of her Denial Order

to the Supreme Court of New Jersey, but it appears that the papers were not delivered.[7]  It remains

unclear when exactly the appeal was docketed, but on April 17, 2017, Plaintiff advised this Court

that the Supreme Court of New Jersey had denied her appeal on March 15, 2017, because of

procedural deficiencies, but permitted Plaintiff to re-file.  (D.E. No. 39 at 3).  To date, it appears

that Plaintiff has not taken any additional actions in state court.

### C.     The Current Action

 On August 25, 2016, Plaintiff initiated the instant matter.  Plaintiff's Complaint alleges

the same four claims alleged in the State Court Complaint: Count I - violation of the FDCPA;

Count II - violation of the NJCFA; Count III - breach of contract; Count IV - IIED.  (*See generally*

Compl.).  Plaintiff also added two more counts: Count V - "deliberate indifference"[8] against all

Defendants, and Count VI - defamation of character only against Stern & Eisenberg.  (*Id.*).[9]

Indeed, she alleges almost all of the same facts alleged in the State Court Complaint.  (*Compare*

Compl., *with* State Court Complaint).  And Plaintiff explicitly incorporates by reference those

factual allegations as to all counts, except Count VI, in the instant Complaint.  (*See* Compl. ¶¶ 53,

59, 67, 77 & 84).

Defendants moved to dismiss Plaintiff's Complaint asserting jurisdictional challenges

---

[7]        It appears that Plaintiff mailed her appeal on July 5, 2016, via certified mail.  (*See* Compl. Exs. Enclosure 4).
However, as of August 16, 2016, the Supreme Court of New Jersey had not received the submission.  (*See id.*,
Enclosure 3).  Plaintiff makes no allegations and the record is silent as to whether the appeal was properly filed.
Further, Defendants indicate that as of December 20, 2016, no docketing order had been issued by the Supreme Court
of New Jersey.  (Defs. Mot. to Dismiss at 4).  On April 13, 2017, Plaintiff notified this Court that she had "re-filed the
appeal with the New Jersey Supreme Court" and was "waiting for a letter the clerk's office . . . promised to send via
US Mail," but she did not state when she filed the appeal.  (D.E. No. 38 at 2).

[8]        Though no such cause of action exists under either New Jersey or federal law, the Court will liberally construe
it in light of Plaintiff's *pro se* status.  The Court will infer that Plaintiff intended to bring a *Monell* claim, based on the
deliberate indifference standard.  *See* 42 USC § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[9]        The Court notes that even with the addition of two claims, Plaintiff Complaint is largely a mirror copy of her
State Court Complaint, and adopts identical language in most of the factual and legal allegations.  (*Compare* Compl.,
*with* State Court Complaint).

under Federal Rule of Civil Procedure 12(b)(1) and alternatively, dismissal for failure to state a claim under 12(b)(6). (Defs.' Mot. to Dismiss; Stern & Eisenberg's Mot. to Dismiss).

On June 5, 2017, however, Plaintiff notified Defendants and the Court that she "need[ed] a delay of these proceedings to be accepted by the Defendants and approved by the Court" in light of her impending "major surgery" and "deteriorating physical condition." (D.E. No. 55 at 1). In light of Plaintiff's request, the Court administratively stayed and closed this matter on July 10, 2017, but gave the parties the right to move to re-open the case. (*See* D.E. No. 65).

On December 12, 2017, Plaintiff filed a "Motion for Interlocutory Injunction & Response to NJ Supreme Court Citing Problems." (*See* D.E. No. 69 ("Second Motion for Interlocutory Injunction")).[10] Specifically, Plaintiff requests that the Court "issue an interlocutory injunction" to "prevent the [D]efendants and the State of New Jersey from moving forward with the theft of [her] home." (*Id.* at 1). On December 14, 2017, Defendants Litton, HSBC, Fremont, Goldman Sachs, Ocwen, and Ocwen Financial Corp. submitted a letter seeking clarification on the terminated status of this matter. (*See* D.E. No. 70 at 2). In light of Plaintiff's *pro se* status, the Court construed Plaintiff's motion as a motion to reopen this matter for good cause. (D.E. No. 71 at 2). Following this Court's order, Plaintiff filed a motion to amend her Complaint to add a count of "false inducement to inaction" and a motion in support thereof (D.E. Nos. 78 & 85 (together "Plaintiff's Motion to Amend")), curing some of the deficiencies identified in Defendants' oppositions to the amended complaint (D.E. Nos. 82 & 83).

On July 24, 2018, Plaintiff filed a letter updating the Court on her health status, indicating that she was "very hopeful that [she] will be healthy enough to proceed after Labor Day." (D.E.

---

[10]     The Court denied Plaintiff's first motion for interlocutory injunction (D.E. No. 44) in an Order dated June 19, 2017, because 28 U.S.C. § 2283 (the "Anti-Injunction Act") expressly barred Plaintiff's request (*see* D.E. No. 59 at 3).

No. 105).  The Court again administratively stayed the case until September 30, 2018.  (D.E. No. 106).  Plaintiff filed another letter on September 26, 2018 indicating, among other things, that she had "received medical approval to proceed to trial" (D.E. No. 109), which the Court construes as a motion to reopen the proceedings.[11]

The Court will now decide the pending motions.  While the majority of this Opinion addresses the threshold issues raised in Defendants' motions to dismiss, Plaintiff's other pending motions will also be addressed.

## II.  STANDARDS OF REVIEW

### A.  Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

The Court can adjudicate a dispute only if it has subject-matter jurisdiction to hear the asserted claims.  *Bender v. Plaintiffport Area Sch. Dist.,* 475 U.S. 534, 541 (1986) (noting federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto").  "Rule 12(b)(1) governs jurisdictional challenges to a complaint."  *Otto v. Wells Fargo Bank, N.A.*, 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016), *aff'd*, 693 Fed. App'x. 161 (3d Cir. 2017).  In deciding a 12(b)(1) motion, "a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed."  *Leadbeater v. JPMorgan Chase, N.A.*, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017).  "When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack" which "contests the sufficiency of the complaint because of a defect on its face."  *Id.* (citations and internal quotation marks omitted).  In reviewing a facial attack, the court should consider only the

---

[11]     Plaintiff has since filed various letters providing the Court with a "Trial Sequence and Index," a list of witnesses and evidence, as well as providing dates Plaintiff is unavailable due to other engagements.  (*See* D.E. Nos. 110–115).  These submissions do not change the Court's analysis for purposes of resolving the present motions.

allegations in the complaint, along with documents referenced therein, in the light most favorable to the nonmoving party. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Thus, the motion is handled much like a 12(b)(6) motion, and allegations in the complaint should be accepted as true. *Leadbeater*, 2017 WL 4790384, at *3.

## B. Failure to State a Claim Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing a Federal Rule of Civil Procedure 12(b)(6) motion, "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a reviewing court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.").

"[A] court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck*, 452 F.3d at 260 ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (citations and internal quotation marks omitted). Further, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations and internal quotation marks omitted).

### III.    DISCUSSION

#### A.    *Rooker-Feldman* Doctrine

Defendants first move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the Complaint for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine.    (Defs.' Mot. to Dismiss at 5).    Particularly, Defendants argue that "Plaintiff has already litigated the same claims regarding her loan modification application against Defendants in the State Court Complaint." (*Id.*).    As explained below, the Court finds that the narrow *Rooker-Feldman* doctrine does not bar the Court's jurisdiction over these claims.

"The *Rooker-Feldman* doctrine strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citations and quotation marks omitted).    This is because federal district courts are "empowered to exercise original, not appellate, jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).    The *Rooker-Feldman* doctrine is narrow and only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

For the *Rooker-Feldman* doctrine to apply, the Third Circuit requires a showing that: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citations and internal

quotation marks omitted).[12]  "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim."  *Id.*

Here, Plaintiff certainly meets the first requirement under *Rooker-Feldman*.  In fact, Plaintiff herself admits that she brought this action into federal court because "she has been denied mediation, a jury trial and more by the New Jersey Superior Court" (Compl. ¶ 1), and that she is "appealing both cases"[13] (Compl. Exs. at 8), which she lost in state court, namely, the underlying foreclosure action (Docket No. Essex-F-000839-13) and the state-court action (Docket No. Essex-L-004753-13).  Additionally, the third prong is also met, because judgements were rendered in the foreclosure action and the state-court action before the instant Complaint.  The foreclosure decision was entered on February 6, 2014, and the state-court action was dismissed in its entirety by June 14, 2016.  (*See* Defs.' Exs. J & H).[14]  Plaintiff's federal Complaint was filed over two months later on August 25, 2016.  (*See* Compl.).

Prong two presents a more exacting question requiring "an inquiry into the source of the plaintiff's injury."  *See Great W. Mining & Mineral Co.*, 615 F.3d at 167.  "When the source of the injury is the defendant's actions (and not the state-court judgments), the federal suit is

---

[12]    The Court notes that Defendants' moving brief fails to lay out the applicable four-part test followed by this Circuit, and instead encourages this Court to adopt a broader view of the *Rooker-Feldman* doctrine implicitly criticized by the Supreme Court in *Exxon*.  *See Exxon Mobil Corp*, 544 U.S. at 283.  The Third Circuit has guided that "for the sake of clarity, we should exercise caution in relying on our pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, particularly those cases which may be read to suggest that the phrase 'inextricably intertwined' created an additional legal test."  *Great W. Mining & Mineral Co.*, 615 F.3d at 169, n. 4 (citations omitted).  Though the inextricably intertwined test has not been explicitly rejected by this Circuit, this Court joins the majority of courts that use the four-part test articulated in *Great Western Mining*.

[13]    Despite Plaintiff's "inartful" pleading and use of this language, the Court must still analyze the applicability of *Rooker-Feldman* under the framework set by *Exxon* and the Third Circuit, which require a showing that the alleged injury was produced by the state-court judgment.  *See Great W. Mining & Mineral Co.*, 615 F.3d at 167.  This is particularly important here in light of Plaintiff's *pro se* status.

[14]    As noted earlier, although it appears Plaintiff attempted to appeal the dismissal of her State Court Complaint to the New Jersey Supreme Court, it does not appear that the appeal had been docketed by the time Plaintiff filed the instant action.  In any event, the Court assumes that prong three is met without a more in-depth analysis because the appeal was dismissed and as discussed below, prong two of *Rooker-Feldman* cannot be established here.

independent, even if it asks the federal court to deny a legal conclusion reached by the state court[.]" *Id.* "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.* (citations omitted). For *Rooker-Feldman* to bar jurisdiction, the injury must have been "*produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 167 (emphasis added) (citations and internal quotation marks omitted). Therefore, the Court must identify the source of the injury for each claim alleged by Plaintiff.

### 1. Count I - Violation of FDCPA

Plaintiff's first count is brought under the FDCPA. Plaintiff alleges that "the Defendants acted in concert to violate the FDCPA" by "attempting to collect a disputed debt[,]" "using foul and abusive language," and harassing Plaintiff. (Compl. ¶¶ 55 & 57). Though this cause of action was previously brought in state court, and decided against Plaintiff, the injury Plaintiff alleges in her Complaint is not one caused by the state-court judgment. In fact, her pleadings explicitly state that "[a]s a *result of the actions of defendants* which violate FDCPA," the Plaintiff has suffered both physical and financial harm. (*Id.* ¶ 58) (emphasis added).

The Court finds the case cited by Plaintiff instructive as it provides the applicable standard articulated by the Supreme Court in *Exxon*. (*See* D.E. 81 at 4 (citing *Hageman v. Barton*, 817 F.3d 611 (8th Cir. 2016)). In *Hageman*, the Eighth Circuit found that a plaintiff's FDCPA claim was not barred by *Rooker-Feldman* because the federal complaint "[sought] relief from neither the [state-court judgment on the debt] nor the [following garnishment] order. Rather, [the plaintiff] allege[d] statutory violations seeking statutory penalties based on [the defendant's] actions in the process of obtaining the judgment and order." *Id.* at 616. Here too, Plaintiff's Complaint alleges injuries based on Defendants' statutory violations, and thus, her FDCPA claim falls outside the

ambit of *Rooker-Feldman*. *See Destefano v. Udren Law Offices, P.C.*, No. 16-7559, 2017 WL 2812886, at *7, (D.N.J. June 29, 2017) (finding that the plaintiff's FDCPA claim was not barred by *Rooker-Feldman* because the alleged injuries did not derive from a judgment of the state court and the state courts foreclosure proceeding made clear that the plaintiff could pursue her claims in another forum).

Further, Defendants arguments rely solely on the theory that Plaintiff's present allegations and claims were already litigated in state court. (*See* Def. Mov. Br. at 7-8). But the Supreme Court in *Exxon* specifically instructed that "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law[,]" and not *Rooker-Feldman*. *Exxon*, 544 U.S. at 293. The Court is satisfied that Count I does not allege the type of injury and review anticipated by this doctrine, and thus ends the *Rooker-Feldman* inquiry as to Count I.

### 2. Count II - Violation of NJCFA

Plaintiff next pleads that the Defendants engaged in acts of unconscionable commercial practices which caused her to suffer damages and injury. (Compl. ¶ 66). To the extent that Plaintiff relies on "Defendants' public listing of [her] home for foreclosure sale" (*Id.* ¶ 63) as a wrongful commercial practice, these allegations would arguably be barred by *Rooker-Feldman*. However, because Plaintiff also relies on "the [D]efendants' decision to solicit, offer and enter into a modification agreement for which it had no intention to honor" and "continued harassment" (*Id.* ¶¶ 60 & 62), the Court finds that *Rooker-Feldman* does not bar Count II. Additionally, Plaintiff complains of Defendants' "decision to continue prosecuting the foreclosure action," but not the actual securing of foreclosure. (*Id.* ¶ 61). To be clear, these injuries arise not from the prior state judgments, but from the actions of the Defendants. Thus, the injuries were not produced by the state-court judgments and *Rooker-Feldman* does not apply to Count II.

### 3.      Count III - Breach of Contract

Plaintiff alleges that she entered into a contract with Litton, who entered into the contract on behalf of itself and the other Defendants.  (*Id.* ¶ 68).  Plaintiff asserts that this contract extinguished any default on her mortgage, because Plaintiff made payments and performed according to her obligations.  (*Id.* ¶¶ 69-70).  She claims that "[d]espite Plaintiff's compliance with the contract, Defendants wrongly continued to prosecute a foreclosure complaint and litigated the matter to final judgment."  (*Id.* ¶ 72).  In sum, Plaintiff does not allege that either the state court foreclosure or the law division judgment caused the injury; she alleges that Defendants caused her injury by pursuing the foreclosure judgment despite extinguishing the default through the contract modification.  (*Id.* ¶ 72).  Clearly then, the alleged injury here was not "produced by [the] state-court judgment" but rather, it was at best "simply ratified, acquiesced in, or left unpunished by it."  *See Great W. Mining & Mineral Co.*, 615 F.3d at 167.  *Rooker-Feldman*, therefore, does not apply to Count III.

### 4.      Count IV- IIED

Similarly, Plaintiff's IIED claim is centered on the premise that Defendants "jointly engaged in a series of actions which were designed to make the plaintiff unhappy, cause her distress, and cause her to give up in an inappropriate war of attrition[,]" compelling Plaintiff "to leave her home."  (Compl. ¶ 81).  Plaintiff contends that the "harassment by defendants . . . [has caused] health problems and . . .  injury."  (*Id.* ¶ 83).  Consequently, Plaintiff's IIED is not an injury caused by a state-court judgment, and the doctrine does not apply.

### 5.      Count V - Deliberate Indifference

Plaintiff's deliberate indifference claim was not raised in the State Court Complaint, although it raises identical issues, factual allegations and conclusions as the IIED claim.  (*Compare*

*id.* ¶¶ 77-83 *with id.* ¶¶ 84-91). Thus, this claim is not barred by *Rooker-Feldman* for the same reasons Count IV is not barred.

### 6. Count VI - Defamation of Character

Finally, Plaintiff's defamation of character claim is lodged only against Stern & Eisenberg. Though Plaintiff's allegations as they relate to this claim are sparse, Defendant Stern & Eisenberg's actions supporting the claim include submitting documents to the Superior Court of New Jersey in connection with the foreclosure action with "erroneous, disparaging remarks about the Plaintiff's character." (*Id.* ¶ 93). No injury is alleged in particular to this cause of action, but Plaintiff's Complaint as a whole can be construed to allege that she suffered injury in the form of job loss and a damaged reputation. (*See generally id.*). Accordingly, it does not appear to the Court that the injury arises from a state-court judgment nor would review of this new cause of action undermine a previously held judgment.

Accordingly, none of the claims are barred by *Rooker-Feldman* and this Court may exercise jurisdiction over the claims.

### B. Failure to State a Claim Under Rule 12(b)(6)

Alternatively, Defendants move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6), relying on res judicata, collateral estoppel, and the statute of limitations. (Defs.' Mot. to Dismiss at 9-13). The Court will address these arguments in turn.

### 1. Res Judicata

Res judicata, also known as claim preclusion, bars "repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011). It is a rule founded on the general public policy that once a court has decided a contested issue, the litigation may not be

renewed in another court. *See Heiser v. Woodruff*, 327 U.S. 726, 733 (1946). "[T]he *Rooker-Feldman* inquiry is distinct from the question of whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) defeats the federal suit." *Great W. Mining & Mineral Co.*, 615 F.3d at 170. Thus, even though the narrow rule of *Rooker-Feldman* may not bar the claims, the preclusion doctrine may forbid this Court from hearing those claims. Further, res judicata "may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

The preclusive effect of a state-court judgment in a subsequent federal action depends on the law of the state that adjudicated the original action. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). New Jersey claim preclusion law, like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984). As explained below, res judicata bars all claims against all Defendants, except for Counts II and III against Litton.

### a. Counts I, II, III & IV

The Court first addresses the third element. Here, that element is easily met since Plaintiff's Complaint alleges the same exact causes of action asserted in the State Court Complaint. In fact, a facial comparison of the factual allegations raised in the State Court Complaint with those raised in this action makes plain that the underlying factual basis is—without a question—the same. (*Compare* State Court Complaint, *with* Compl.).

The second element is also easily met. Williams, the plaintiff in the instant action, was

also the plaintiff in the state-court action. Similarly, Defendants Litton, HSBC, Fremont, Goldman Sachs, Ocwen, and Stern & Eisenberg were all named defendants in the State Court Complaint. (*See* State Court Complaint). Defendant Ocwen Financial Corp., however, was not a named Defendant in the state-court action. But "res judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991) (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972)); *see also Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) ("Privity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata.") (internal quotation marks and citations omitted). Moreover, "a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." *Lubrizol Corp.*, 929 F.2d at 966 (citation omitted). Here, Ocwen Financial Corp. is Ocwen's parent company, and thus, a sufficiently "close or significant relationship" exists to invoke the doctrine of res judicata. *See id.* (holding that plaintiff was precluded from bringing federal claims against the parent company of a wholly owned affiliate who had been a defendant in a state-court action arising out of the same occurrence). And as noted above, a facial comparison of the two complaints shows that Plaintiff here seeks to assert against Ocwen Financial Corp. "essentially the same claim[s]" she asserted against Ocwen in state court. *See Lubrizol Corp.*, 929 F.2d at 966. Indeed, the Complaint does not allege any facts specifically against Ocwen Financial Corp. (*See* Compl.).

Lastly, the first element requires a closer analysis. All claims in the state action were adjudicated on a motion for summary judgment, with the exception to the NJCFA and breach of contract claims against Litton. (*See* Defs.' Ex. E). Plaintiff contends that there was no final

judgment because "the State never considered the issues [before it] because [the state court] blocked hearing the issues." (D.E. No. 81 at 2).[15] However, "the whole point of the summary judgment practice is to enable a party in appropriate circumstances to obtain, on motion and without plenary trial, the final adjudication of an action, in full or in part, on its merits." *Auster v. Kinoian*, 378 A.2d 1171, 1174 (N.J. App. Div. 1977). The same principle applies in federal court. *See McLaughlin v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, No. 16-3121, 2016 WL 5955530, at *3 (D.N.J. Oct. 13, 2016) ("[S]ummary judgment is a final judgment on the merits for the purposes of res judicata."). And although Plaintiff may have appealed the state-court action to the New Jersey Supreme Court, that appeal was denied on March 15, 2017. (D.E. No. 39 at 3). And in any event, "the fact that a judgment has been appealed does not affect the finality of the judgment for purposes of res judicata." *McLaughlin*, 2016 WL 5955530, at *3. Therefore, res judicata bars Counts I, II, III, and IV against Defendants HSBC, Goldman Sachs, Fremont, Ocwen, Ocwen Financial Corp., and Stern & Eisenberg. For the same reasons Counts I and IV are also barred against Litton.

After the grant of summary judgment, the NJCFA and the breach of contract claims remained against Litton only. These remaining claims were then dismissed for lack of prosecution. (Defs.' Ex. H). N.J. Court Rule 4:37-2, much like Federal Rule of Civil Procedure 41(b), states that an involuntary dismissal operates as an adjudication on the merits "unless otherwise specified." N.J. Court Rule 4:37-2(d); *see also* Fed. R. Civ. P. 41 (involuntary dismissal is one the merits unless "the dismissal order states otherwise"). Here, the state-court judge unequivocally stated that the dismissal was *without prejudice*. (*See* Defs.' Ex. H). "The words 'without prejudice' generally indicate that there has been no adjudication on the merits of the claim, and

---

[15] Though Plaintiff raises this claim against Defendants' *Rooker-Feldman* argument, the Court liberally construes her *pro se* submissions to the Court. *See Erickson*, 511 U.S. at 94.

that a subsequent complaint alleging the same cause of action will not be barred simply by reason of its prior dismissal." *Velasquez v. Franz*, 589 A.2d 143, 145 (N.J. 1991) (citations and internal quotation marks omitted). Other New Jersey courts have found that a dismissal for lack of prosecution, without prejudice, does not bar a claim under res judicata. *See Thomas v. Spolnicki*, No. L-3422-14, 2017 WL 4051728, at *2-3 (N.J. Super. App. Div. 2017) (finding that a dismissal without prejudice for lack of prosecution was not a judgment that carried preclusive effect for purposes of the res judicata analysis); *Dingler v. Yallof*, No. L-065-12, 2013 WL 3184658, at *2 (N.J. Super. App. Div. 2013) (finding that plaintiff's first complaint "was dismissed without prejudice for lack of prosecution and was not adjudicated on its merits"); *Davis v. Riverview Towers*, No. A-0389-07T3, 2009 WL 774698, at *1 (N.J. Super. App. Div. 2009) (holding that res judicata did not warrant dismissal of a second action because "disposition of the first suit did not constitute an adjudication on the merits but was simply a dismissal for lack of prosecution").

The Court holds that state court's dismissal of the NJCFA and breach of contract claims against Litton, without prejudice, does not constitute an adjudication on the merits, and is not given a preclusive effect. Accordingly, Counts II and III of the instant Complaint are not barred by res judicata as against Litton only.

### b. Counts V & VI

"Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *McNeil v. Legislative Apportionment Comm'n of State*, 828 A.2d 840, 859 (N.J. 2003) (quoting *Watkins*, 591 A.2d at 599). Relevant here, "causes of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence. If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action. Otherwise, theories not raised will be

precluded in a later action." *Watkins*, 591 A.2d at 599.

Even though Counts V and VI were not pleaded in the State Court Complaint, claim preclusion still applies. After examining the present Complaint, the Court sees no material facts that differentiate the controversy from the one adjudicated in state court. As previously stated, Plaintiff adopts the same facts alleged in the State Court Complaint. (*See generally* Compl.; State Court Complaint). And Plaintiff explicitly incorporates by reference those factual allegations as to all counts, except Count VI, in the instant Complaint. (*See* Compl. ¶¶ 53, 59, 67, 77 & 84). Further, as with her state court claims, Counts IV and V here merely seek to remedy the same underlying wrong allegedly committed by Defendants. Plaintiff's deliberate indifference claim is identical to her IIED claim and uses a mere recitation of the elements used to discuss the IIED claim. Similarly, Plaintiff's defamation of character claim relies on the same "harassing conduct" cited for other causes of action. Indeed, the relief sought remains consistent in all causes of action. In short, because Counts V and VI arise out of the same transaction or occurrence as the state court claims previously adjudicated on the merits against the same parties, they are also barred by res judicata.[16]

Accordingly, Counts I through VI are dismissed *with prejudice* as to Defendants HSBC, Fremont, Goldman Sachs, Ocwen, Ocwen Financial Corp., and Stern & Eisenberg. Counts I, IV, and V are dismissed *with prejudice* as to Defendant Litton. However, Plaintiff's NJCFA and breach of contract claims (Count II and III) against Litton are not barred by res judicata.

---

[16]     Despite the Court's finding that Plaintiff's NJCFA and breach of contract claims against Litton were not previously adjudicated on the merits, the Court still finds that Count V is barred by res judicata against Litton. This is because this claim is substantially related to Count IV, which was adjudicated on the merits as to *all* Defendants. The Court also notes that Judge Mitterhoff's Denial Order of Plaintiff's motion to amend served as an adjudication on the merits. The state court ordered that Plaintiff would be permitted to amend her complaint to include certain causes of action against Litton only, none of which included anything like deliberate indifference. (*See* Denial Order).

### 2. Collateral Estoppel

Defendants also move to dismiss under the doctrine of collateral estoppel, also known as issue preclusion, arguing that the core issues were already fully litigated in the state-court action. (Defs.' Mot. to Dismiss at 9).

"The purpose of the collateral estoppel doctrine is to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to repeatedly re-litigate the same issues in multiple lawsuits." *Great W. Min. & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 760 (D.N.J. 2012), *aff'd*, 533 F. App'x 132 (3d Cir. 2013). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). For collateral estoppel to apply, New Jersey courts require the party asserting the doctrine to show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *Wildoner v. Borough of Ramsey*, 720 A.2d 645 (N.J. App. Div. 1998) (citing *In re Dawson,* 641 A.2d 1026 (N.J. 1994))

Although collateral estoppel would bar almost all of Plaintiff's claims, the Court is not convinced that the doctrine bars the two remaining claims (Counts II and III) against Litton. Like the analysis provided under res judicata, Plaintiff's breach of contract and NJCFA claims against Litton were not bound by a valid and final judgment on the merits. *See Edmundson*, 4 F.3d at 191 (holding that issue preclusion would not apply to court proceedings dismissed for lack of

prosecution).  In fact, Judge Mitterhoff held that a "rational jury could conclude that Litton promised Plaintiff she would receive a modification" and that "there still exists genuine questions of material fact relating to whether the parties' conduct formed the basis for an enforceable unilateral contract."  (Defs.' Ex. E at 10-11).

Lastly, "under the generally accepted meaning of the term, a fact may be deemed essential to a judgment where, without that fact, the judgment would lack factual support sufficient to sustain it."  *Feng Li v. Peng*, 516 B.R. 26, 47 (D.N.J. 2014), *aff'd sub nom. In re Feng Li*, 610 F. App'x 126 (3d Cir. 2015) (quoting *Raytech Corp. v. White*, 54 F.3d 187, 193 (3d Cir. 1995)).  Here, the issue that Defendant Litton engaged in a scheme to harass Plaintiff out of her home in violation of an alleged agreement is essential because Plaintiff would have no basis to sustain her breach of contract claim against the Defendant Litton without these facts.  But this issue was previously dismissed without reaching the merits.  (*See* Defs.' Exs. E & H.).  Accordingly, Plaintiff's breach of contract and NJCFA claims against Litton are not barred by issue preclusion.

### 3.     Statute of Limitations

Defendants' final argument centers on the statute of limitations.  (Defs.' Mot. to Dismiss at 13).[17]  Under New Jersey law, the date that a "cause of action is deemed to have accrued is the date upon which the right to institute and maintain a suit first arises."  *Belmont Condo. Ass'n, Inc. v. Geibel*, 74 A.3d 10, 29 (N.J. Super. Ct. App. Div. 2013) (citations and internal quotation marks omitted).  Since only the NJCFA and breach of contract claims against Litton remain, the Court will only address the time bar arguments as to those claims.  The Court finds that both claims are time-barred and must be dismissed *with prejudice*.

---

[17]     The Court notes that Defendant Stern & Eisenberg did not address the statute of limitations in its motion to dismiss.

### a.     Count II - Violation of NJCFA

The applicable statute of limitations for a violation of the NJCFA is six years.  *See* N.J.S.A. 2A:14–1; *DiIorio v. Structural Stone & Brick Co.*, 845 A.2d 658, 663 (N.J. Super. Ct. App. Div. 2004).  NJCFA claims require proof of (1) an unlawful practice, (2) an ascertainable loss, (3) a causal relationship between the unlawful conduct and the ascertainable loss.  *Gonzalez v. Wiltshire Credit Corp.*, 25 A.3d 1103, 1115 (N.J. 2001).

The unlawful practice described in Plaintiff's Complaint arose from Litton's failure to honor a loan modification agreement by pursuing foreclosure despite Plaintiff's alleged compliance with the modification agreement.  (Compl. ¶¶ 60-64).  However, the last time Litton offered Plaintiff a "workout plan" was in March 2010.  (*Id.* ¶ 37).  Plaintiff further claims that her ascertainable loss was in the form of losing her security clearance and having FEMA and Homeland Security contracts withdrawn.  (*Id.* ¶¶ 39, 44 & 51-52).  All injuries identified in the Complaint had accrued by May of 2010.  Accordingly, a violation of the NJCFA would be barred because Plaintiff's Complaint was filed six years and two months after the cause of action accrued.[18]  The Court dismisses the NJCFA claim *with prejudice*.

### b.     Count III - Breach of Contract

Breach of contract claims are governed by the same six-year statute of limitations as NJCFA.  *See* N.J.S.A. 2A:14–1.  Plaintiff's allegations for her breach of contract claim are based on the existence of an enforceable agreement to enter into a loan modification.  Most allegations

---

[18]     Plaintiff also relies on a "decision to continue prosecuting the foreclosure action in violation of the contract between the parties" as an unconscionable commercial practice.  (Compl. ¶ 61).  However, Plaintiff has failed to identify any ascertainable loss in connection with the foreclosure.  Defendant insists that to date Plaintiff's home has yet to be put up for auction or sheriff's sale.  (*See* D.E. No. 49).  Thus, to the extent that the foreclosure action would extend the statute of limitations, Plaintiff's pleading would fall short of establishing a NJCFA claim.  Further, any wrongful action arising after November 2011 in support of Plaintiff's NJCFA claim would obfuscate Litton's liability. The last date that Litton took any actions as they relate to Plaintiff's mortgage, or loan modification, was in March 2010.  (*See* Compl.).  Therefore, even if Plaintiff were permitted to bring NJCFA claims based on the foreclosure action and subsequent collection of debt, any claims against Litton would still be barred.

are directed to Litton. However, as previously indicated, the last time Litton took any actions as they relate to Plaintiff's mortgage or loan modification was March 2010. (*See* Compl. ¶¶ 37 & 68-74). And as noted above, the alleged injuries from this breach accrued by May 2010 at the latest. Accordingly, any breach of contract claims raised against Litton would have accrued by then, and are thus outside the six-year statutory bar. The Court dismisses the claim *with prejudice*.

## IV. REMAINING MOTIONS

Still pending are Plaintiff's Second Motion for Interlocutory Injunction (D.E. No. 69) and Plaintiff's Motion to Amend (D.E. Nos. 78 & 85). The Court will address these motions now.

### A. Plaintiff's Second Motion for Interlocutory Injunction

Plaintiff requests that the Court "issue an interlocutory injunction" to "prevent the [D]efendants and the State of New Jersey from moving forward with the theft of [her] home." (D.E. No. 69 at 1). The Court denied Plaintiff's first motion for interlocutory injunction (D.E. No. 44) in an Order dated June 19, 2017, because 28 U.S.C. § 2283 (the "Anti-Injunction Act") expressly barred Plaintiff's request. (*See* D.E. No. 59 at 3). Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see also Bono v. O'Connor*, No. 15-6326, 2016 WL 2981475, at *11 n.13 (D.N.J. May 23, 2016) ("[I]f the federal court were to find that the defendant banks improperly instituted a state foreclosure action, it would also effectively constitute an injunction enjoining the state court from ordering a foreclosure sale, which is prohibited by the Anti-Injunction Act.") (cleaned up). Plaintiff's new motion does not identify any issues with respect to this Court's jurisdiction or enforcement of its judgments, nor did Plaintiff identify an Act of Congress that expressly authorizes the type of injunction Plaintiff seeks. (*See* D.E. No. 69).

To date, the Court has not required opposition briefing to Plaintiff's Second Motion for Interlocutory Injunction. However, because Plaintiff's Second Motion for Interlocutory Injunction fails to address the deficiencies already identified on the record, the Court denies the motion because it remains prohibited by the Anti-Injunction Act.

### B.     Plaintiff's Motion to Amend

Plaintiff's proposed amended complaint seeks only to add a claim of "false inducement to inaction." (*See* D.E. No. 78 & 85). Liberally construing Plaintiff's motion, the Court analogizes this to a claim for fraudulent inducement.

Federal Rule of Civil Procedure 15(a)(2) governs Plaintiff's motion to amend. Plaintiff alleges that adding a count of fraudulent inducement would be proper because "[t]he Defendants clearly induced Plaintiff to . . . avoid another refinance of the mortgage [and] to continue payments on a fraudulent mortgage . . . ." (D.E. No. 85 at 16). A district court may deny leave to amend where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted). Here, any proposed amendment would be futile.

First, the amended complaint does not comply the pleading standard set out by Federal Rule of Civil Procedure 8(a)(2), much less 9(b). The Court finds persuasive Defendants' argument that "allegations lumping all defendants together" does not comply with Rule 8(a)(2). (D.E. No. 87 at 2). Rule 8(a)(2)'s pleading standard requires that a complaint set forth the plaintiff's claims with enough specificity as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570. Even liberally construing Plaintiff's amended complaint, her *pro se* status does not relieve her of the obligation to "clearly and specifically" identify which claims pertain to which defendants. *Pushkin v. Nussbaum*, No. 12-0324, 2013 WL

1792501, at *4 (D.N.J. Apr. 25, 2013) ("[T]he Court cannot expect the Defendants to defend against claims that are not clearly and specifically alleged."); *see also, Boyd v. N.J. Dep't of Corr.*, No. 12-6612, 2013 WL 4876093, at *6 (D.N.J. Sept. 10, 2013) (finding complaint deficient when it held "eleven Defendants liable on all claims, without pleading specific facts indicating each Defendant's liability for each claim").

Second, even if the amendment complied with the pleading standard, the amendment would not change the forgoing analysis, particularly with respect to res judicata. The alleged fraud pleaded in Plaintiff's proposed amended complaint arises out of the same occurrence as the dismissed State Court Complaint. The crux of Plaintiff's Complaint is that Litton (and the other Defendants) failed to honor its promises to grant Plaintiff a loan modification, and as a result, the subsequent foreclosure action was wrongful. (*See* Compl. ¶¶ 16, 25, 33, 40, 45, 60, 61, 69, 72, 79, 86 & 92). In accordance with the Court's analysis above, any additional legal theory arising out of this occurrence and lodged against the same Defendants was granted final judgment and is part of the same "cause of action."

Finally, the applicable statute of limitations fraudulent inducement is six years. *See* N.J.S.A. § 2A:14-1. Plaintiff's proposed fraud claim stems from false misrepresentations during the time Plaintiff sought a loan modification, which would date back, at the latest, to early March 2010. Even if Plaintiff's new claim was to relate back to August 25, 2016—when she filed her Complaint—this occurred a few months after the applicable limitations period. Accordingly, Plaintiff's motion to amend is denied as futile.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motions to dismiss Plaintiff's Complaint. Because amending would be futile, Plaintiff's motion to amend is DENIED

and the Complaint is dismissed *with prejudice*. Plaintiff's second motion for interlocutory injunction is also DENIED. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**
